[Civ. No. 49797. First Dist., Div. Three. Aug. 30, 1982.]

SUSAN GARFINKLE et al., Plaintiffs and Appellants, v.
WELLS FARGO BANK et al., Defendants and Respondents.

COUNSEL

Gary Garfinkle, in pro. per., James R. Trembath and Trembath, McCabe & Schwartz for Plaintiffs and Appellants.

David W. Lennihan, David J. Brown and Brobeck, Phleger & Harrison for Defendants and Respondents.

OPINION

**SCOTT, Acting P. J.**—This appeal is from a judgment entered in favor of respondent Wells Fargo Bank (Bank) after an order (1) vacating an order certifying a class, and (2) granting the Bank's motion for summary judgment dismissing this action as a class action.

This action is one of a number of legal actions between Susan and Gary Garfinkle (the Garfinkles) and Wells Fargo Bank, all of which arose after the Garfinkles purchased a residence in 1970 from sellers whose loan on the property was secured by a deed of trust in favor of the Bank.[1] The deed of trust contained a standard due-on-sale clause providing that the Bank could accelerate the balance due on the loan if the sellers sold without its written consent. The Bank offered to let the Garfinkles assume the loan at an increased rate of interest in return for its agreement not to accelerate, but the Garfinkles refused to assume on those terms. The Bank then informed sellers and the Garfinkles that the note was due in its entirety; when that balance due was not paid, the Bank recorded notice of default as authorized by the due-on-sale clause, and indicated its intent to sell the property.

The Garfinkles then commenced a series of actions challenging both the constitutionality of this state's nonjudicial foreclosure procedure and the validity of the automatic enforcement of the due-on-sale clause; these actions culminated in an action seeking relief in Contra Costa County Superior Court. The action was filed on behalf of the Garfinkles as individuals, and all others similarly situated.

The Bank filed a general demurrer to the complaint; the demurrer was overruled as to the cause of action challenging the due-on-sale clause.[2] In April 1978, the trial court certified the following class: "All persons who, since April 12, 1970, have purchased residential real property under the following circumstances:

"(a) Immediately before the purchase, the property was subject to a secured loan that had been made by Wells Fargo Bank.

"(b) The loan agreement contained a "due-on-sale" clause providing that upon sale of the property the entire unpaid balance of the loan shall become due and payable at the bank's option.

---

[1] Our condensed summary of the factual and procedural history of this litigation has been culled from the record in this case and in *Garfinkle v. Superior Court* (Mar. 5, 1979) 1 Civ. 45643 [unpub. opn.], and from the Supreme Court's opinion in *Garfinkle v. Superior Court* (1978) 21 Cal.3d 268 [146 Cal.Rptr. 208, 578 P.2d 925].

[2] The trial court sustained the demurrer without leave to amend as to the constitutional challenge to the nonjudicial foreclosure procedure, on the ground that no state action was involved; the Supreme Court agreed. (*Garfinkle v. Superior Court, supra,* 21 Cal.3d 268, 272.)

"(c) Under Wells Fargo Bank's (or its assignee's) policy the purchaser could not assume the pre-existing obligations of the loan, without being required to pay a higher interest rate and/or a fee or penalty to the bank.

"(d) The purchaser financed the purchase, having to pay a higher interest rate than that provided for in the preexisting Wells Fargo loan agreement and/or a fee or penalty, through one of the following means:

"(i) Assumed the pre-existing loan;

"(ii) Paid off the pre-existing loan and secured a new loan from Wells Fargo Bank; or

"(iii) Paid off the pre-existing loan and secured a new loan from some other source."

The relief requested on behalf of the class by the Garfinkles as class representatives was (1) "the difference between the sum of the payments that would have been required under the original agreement [the seller's loan] and the sum of payments actually made plus attorneys fees and other expenses paid to THE BANK as a result of the acceleration pr threatened acceleration . . ."; and (2) a declaration that each class member was entitled to assume the loan between the Bank and the class member's predecessor in interest.

In August 1978, in *Wellenkamp* v. *Bank of America* (1978) 21 Cal. 3d 943 [148 Cal.Rptr. 379, 582 P.2d 970], the Supreme Court held that a due-on-sale clause contained in a promissory note or deed of trust cannot be enforced by an institutional lender upon the occurrence of an outright sale unless the lender can demonstrate that enforcement is reasonably necessary to protect against impairment to its security or the risk of default. (*Id.*, at p. 953.)[3] The Supreme Court rejected an argument that because lenders had entered into long-term real estate loan contracts expecting to derive economic benefits from enforcement of the due-on-sale clause, its decision should be given purely prospective ef-

---

[3]The *Wellenkamp* rule also applies to private lenders, and to both residential and investment property. (*Dawn Investment Co.* v. *Superior Court* (1982) 30 Cal.3d 695, 702 [180 Cal.Rptr. 332, 639 P.2d 974].) However, federally chartered savings and loan institutions are not bound by the *Wellenkamp* rule. (*Fidelity Federal Savings and Loan Assn.* v. *De la Cuesta* (1982) 458 U.S. 141 [73 L.Ed.2d 664, 102 S.Ct. 3014].)

fect. Nevertheless, the court did limit the retroactivity of its holding. "[G]iven the importance of the stability of real estate titles and the interest in preserving completed real estate financing arrangements, we hold that this decision shall not apply when the lender, prior to the date that this decision becomes final, has either enforced the due-on clause, resulting in sale of the subject property by foreclosure or in discharge of the accelerated debt, or when the lender has waived enforcement of the due-on clause in return for an agreement with the new buyer modifying the existing financing." (*Id.*, at p. 954.)

In light of this limitation, the trial court granted the Bank's motion to vacate the order certifying the class, and for summary judgment of dismissal of the action as a class action.[4] It is apparent that the trial court's action was proper. The class as certified consisted of individuals who had either (1) secured a new loan and discharged the preexisting debt, presumably upon enforcement of the due-on-sale clause, or (2) agreed to assume the preexisting loan at a higher interest rate, presumably in exchange for the lender's waiver of enforcement of the due-on clause. The *Wellenkamp* court expressly excluded such individuals from the benefits of its decision.

Appellants argue valiantly but unpersuasively in an attempt to avoid the death knell sounded by the *Wellenkamp* court for their class action. First, appellants argue that this particular bank's enforcement of due-on-sale clauses against these class members was improper even before *Wellenkamp*, and that it should not be allowed to retain "illegally coerced" profits. They reason: (1) this bank enforced these clauses *solely* to increase its profits, not to protect its security interests; and (2) prior Supreme Court cases had rejected increased profits as a justification for enforcing due-on clauses. It is true that in contexts other than outright sales, the Supreme Court had concluded that acceleration was not justified because it was commercially beneficial to the lender. (See, e.g., *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 880, fn. 17 [97 Cal.Rptr. 849, 489 P.2d 1113] [due-on-encumbrance provision]; *Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629, 639, fn. 10 [116 Cal.Rptr. 633, 526 P.2d 1169] [enforcement of due-on clause upon execution of an installment land contract].) It was not until *Wel-*

---

[4]Respondents' motion for summary judgment amounted to a challenge to the class representatives' ability to state a cause of action as a matter of law and was in effect a motion for judgment on the pleadings. (See *Sparks* v. *City of Compton* (1976) 64 Cal. App.3d 592, 595, fn. 1 [134 Cal.Rptr. 684]; *C. L. Smith Co.* v. *Roger Ducharme, Inc.* (1977) 65 Cal.App.3d 735, 745 [135 Cal.Rptr. 483].)

*lenkamp*, however, that the Supreme Court decided that enforcement of a due-on clause after transfer of property *by outright sale* wherein legal title is transferred was a restraint on alienation of sufficient quantum to require justification at all. (*Wellenkamp* v. *Bank of America, supra*, 21 Cal.3d at pp. 949-951.) To reach that conclusion, the Supreme Court was compelled to explain away dicta suggesting otherwise in both *La Sala* and *Tucker*, and disapprove *Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574 [81 Cal.Rptr. 135], in which the court had concluded at page 580 that a due-on-sale clause was *not* an invalid restraint on alienation. (*Wellenkamp, supra*, 21 Cal.3d at pp. 949-950, 953.) Moreover, the Supreme Court itself has referred to *Wellenkamp* as an example of a case which overruled a settled rule of law. (*Henn* v. *Henn* (1980) 26 Cal.3d 323, 328 [161 Cal.Rptr. 502, 605 P.2d 10].)

In a related argument, appellants contend that despite its unequivocal language, the Supreme Court did not actually intend to except all completed real estate financing arrangements from its holding. Appellants would have us conclude that lenders who have *automatically* enforced due-on clauses to protect their security interests, without determining whether purchasers would in fact be credit risks, are protected by *Wellenkamp*'s limited retroactivity, whereas lenders who have enforced clauses solely to increase their profits, after determining that assumption would *not* impair their security, are not. Appellants' argument is without merit. Nothing in *Wellenkamp* supports such a distinction, and distinguishing between lenders on the basis of their motives would obviously be inconsistent with the court's stated purpose in limiting the retroactive effect of its decision: the preservation of completed real estate financing arrangements and the importance of the stability of real estate titles. (*Wellenkamp, supra*, 21 Cal.3d at p. 954.)

Next, appellants contend that the rule announced in *Wellenkamp* should at least be applicable to those cases which were pending in the trial court when it was decided. In support of that argument, appellants call our attention to the fact that after the Supreme Court decided *Wellenkamp*, it retransferred two cases pending before it, *DeMey* v. *Joujon-Roche* (L.A. 30716) and *Medovoi* v. *American Savings and Loan Association* (L.A. 30717), to the Courts of Appeal for further proceedings, and ordered their disposition governed by the the substantive principles of *Wellenkamp*. (Supreme Court minutes, Nov. 15, 1978.) However, it is the written published opinions of the Supreme Court which furnish binding precedent under the doctrine of stare decisis (see *McGlothen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d

1005, 1018 [140 Cal.Rptr. 168]; see also *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), not orders of that court in its minutes. ▉ The Supreme Court flatly declared the circumstances under which its *Wellenkamp* rule is inapplicable; it made no exceptions for cases pending in the trial court. (*Wellenkamp* v. *Bank of America, supra,* 21 Cal.3d at p. 954; cf. *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 928-932 [154 Cal.Rptr. 503, 593 P.2d 200]; *In re Jacqueline H.* (1978) 21 Cal.3d 170, 179, fn. 9 [145 Cal.Rptr. 548, 577 P.2d 683].) Unless and until that court decrees otherwise, we can only assume that it meant what it said when it defined *Wellenkamp*'s limited retroactivity, and we must abide by that determination. (*Auto Equity Sales, Inc., supra,* 57 Cal.2d at p. 455.)[5]

Finally, appellants contend that even if these class members cannot recover damages caused by past enforcement of due-on-sale clauses, they should be entitled to declaratory and injunctive relief, to protect against future improper use of such clauses by the Bank. In support of their argument that such relief is imperative, they note that in opposition to this appeal, the Bank argues that *Wellenkamp* does not prevent enforcement of a due-on-sale clause under a variety of circumstances. However, as certified, this class is not composed of individuals against whom the Bank is now attempting to enforce a due-on-sale clause despite *Wellenkamp.* As a result, any discussion of *Wellenkamp*'s scope would be no more than dicta. The rendering of advisory opinions is not a function of this court. (*Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 875 [127 Cal.Rptr. 110, 544 P.2d 1310]; *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].)

Judgment is affirmed.[6]

---

[5]We note that the Garfinkles as individuals have not been deprived of the benefits of *Wellenkamp.* Unlike the certified class, they have never agreed to pay a higher rate of interest in order to assume their seller's loan; throughout this litigation, they have tendered and the Bank has accepted payments due on that loan. The trial court did grant the Bank's motion for summary judgment dismissing their individual cause of action after the Bank announced its intent to foreclose prior to the date *Wellenkamp* became final; however, we ordered that summary judgment set aside, for reasons unrelated to the question presented in this case. (*Garfinkle* v. *Superior Court* (Mar. 5, 1979) 1 Civ. 45643 [unpub. opn.].)

[6]Subsequent to the waiver of oral argument appellants requested that the appeal be dismissed in that they had settled their individual litigation and that "[t]hey believe that any possible benefits to the class from proceeding further are substantially

Barry-Deal, J., concurred.

**FEINBERG, J.,** Dissenting.—On July 21, 1982, appellant filed a request to dismiss the appeal (rule 19(b) Cal. Rules of Court). Respondent has not opposed the request. Rather than decide the case on its merits, I would dismiss the appeal.

---

outweighed by the burdens and potential adverse consequences of maintaining the litigation for the many additional years that would be required." We conclude that the class action issues determined herein are of sufficient public importance to require the filing of our opinion. (Cal. Rules of Court, rule 19(b); 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 450-451, pp. 4410-4412.) Request to dismiss is denied.